UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| EAGLES NEST, LLC; BEVERLY BAUER; AND CORTEZ INVESTMENTS GROUP, INC., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:14-00010 |
| MOY TOY, LLC, and STANDING ROCK, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

In this action that was removed from state court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2) & 1453, Plaintiffs have filed a Motion to Remand. That Motion has been fully briefed by the parties and, for the reasons that follow, will be granted.

### I.

The relevant allegations from the Complaint are as follows:

Plaintiffs, Eagle Nest LLC, a Nevada corporation, Cortez Investments Group, Inc., a Florida corporation, and Beverly Bauer, a citizen and resident of Louisiana, own multiple lots in the Renegade Resort community in Cumberland County, Tennessee. Defendant, Moy Toy, Inc., a Tennessee limited liability company, is the "purported developer of Renegade Resort" (Docket No. 1-2, Complaint ¶ 9), Defendant Terra Mountain Holdings, LLC, a Georgia limited liability company, obtained a large tract of land adjacent to Renegade Resort from Moy Toy, and Defendant Standing Rock, LLC, also a Tennessee limited liability corporation, owns the golf course property in

1

Renegade Resort.

The lots in Renegade Resort are subject to restrictions recorded in the Cumberland County Register of Deeds. The original restrictions ("1972 Restrictions") envisioned

> the developer in Renegade Resort developing the lands as part of a common master plan of development intending to add other lands to the development and creating thereon a residential and commercial resort with streets, water and sewer systems, recreation facilities of various types, and other common facilities for the use and benefit of the owners of said properties.

(Id. ¶ 33). The 1972 Restrictions further "state[d] an intention to bind adjacent properties to the common scheme of development and to add them and protect them over time." (Id. ¶ 35).

The 1972 Restrictions also provided for amendment upon an affirmative vote of a majority of the owners' association members, and adoption by the developer. Nevertheless, amendments were made to the restrictions in 1987 and 2005 that "were improperly recorded and improperly executed without membership approval by vote and without valid developer approval as required" and were improperly recorded in an "attempt to increase the power for the purported developer while simultaneously taking vested property rights from existing property owners." (Id. ¶ 25).

Plaintiffs, on behalf of a class that "would include approximately 551 owners and 1,351 lots and living units less those owned by Defendants[,] . . . require clarification as to their property rights" and "a uniform decision as to which restrictions govern Renegade Resort inasmuch as multiple amended restrictions have been recorded under questionable circumstances" that "purport to bind all owners in Renegade Resort." (Id. ¶¶ 12 &15). They also request a decision as to how the lands adjacent to Renegade Resort may be utilized. (Id. ¶ 16).

Plaintiffs challenge Moy Toy's "claims to have developer control" by "virtue of purported superior voting rights in the Community Club" because "[d]eveloper rights were never properly and

2

completely conveyed by and through Moy Toy, LLC's predecessors in title." (Id. at 28).[1] They also assert that Terra Mountain Holdings "is seeking to place a conservation easement on it property which forms part of the master planned community," but that such "a conservation easement would be markedly inconsistent with and different from those uses contained in and provided for in the 1972 Restrictions, the master plan of development, and multiple repeated representations of Terra Mountain Holdings, LLC's predecessor in title." (Id. ¶ 30).[2] As to Defendant Standing Rock, Plaintiffs claim that it intends to "put a conservation easement" on the property where the golf course was located that contravenes the 1972 Restrictions, which provided that a golf course would be constructed as "common property for the use and benefit of those in Renegade Resort." (Id. ¶ 46).

Plaintiffs filed suit in the Chancery Court for Cumberland County seeking declaratory and injunctive relief. They make no specific claim for money damages.

## II.

The CAFA "provides that a federal district court has jurisdiction in a civil action where there is diversity, 28 U.S.C. § 1332(d)(2)(A), the amount in controversy exceeds $5 million, § 1332(d), and the proposed class includes at least one hundred members, § 1332(d)(5)(B)." Salling v. Budget Rent-A-Car Systems, Inc., 672 F.3d 442, 443 (6th Cir. 2012). "Such a class action may be removed to a federal district court as provided by 'section 1446 (except that the 1–year limitation under section 1446(b) shall not apply), without regard to whether any defendant is a citizen of the State

---

[1] The Renegade Mountain Community Club is the property owners' association for Renegade Resorts. Under the 1972 Restrictions, the owner with developer rights is entitled to ten votes per lot. (Id. ¶ 11).

[2] After suit was filed, but before the case was removed to this Court, Plaintiffs filed a Notice of Voluntary Dismissal as to Terra Mountain Holdings. (Docket No. 1-5).

3

in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.'" In re Mortgage Electronic Registration Sys., Inc. 680 F.3d 849, 853 (6th Cir. 2012) (quoting 28 U.S.C. § 1453(b)). "[A] defendant seeking removal must prove, by a preponderance of the evidence, that jurisdictional requirements have been met." Salling, 672 F.3d at 443.

In seeking to remand this case, Plaintiffs argue Defendants have not established that removal was proper because (1) Defendants claim the jurisdictional threshold has been met, even though Plaintiffs seek only injunctive and declaratory relief their Complaint; (2) Defendants' assertion of the amount in controversy is based upon nothing but speculation and guesswork; and (3) Defendants' allegations as to the citizenship of the parties is deficient. Plaintiffs also argue that, even if Defendants have sufficiently established this Court's jurisdiction, the action should be remanded pursuant to the discretionary exception identified in the CAFA. The Court agrees with the last argument and will remand this case to the Chancery Court on that basis.

**III.**

While the "CAFA greatly expands federal jurisdiction over certain class actions," Lemy v. Direct Gen. Fin. Co., 559 F. App'x 796, 798 (11th Cir. 2014), it "does not grant jurisdiction in all cases, providing judges discretionary jurisdiction in some instances, 28 U.S.C. § 1332(d)(3), and barring jurisdiction in others, 28 U.S.C. § 1332(d)(4)," West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 178 (4th Cir. 2011). As the court in McGraw explained:

> To be sure, CAFA does protect important federal interests in addressing state abuses in interstate class actions. It was enacted to prevent States from keeping "cases of national importance out of Federal court" and making "judgments that impose their view of the law on other States and bind the rights of the residents of those states." Id. § 2(a)(4). It thus assures that federal courts decide "interstate cases of national importance." Id. § 2(d)(2). But CAFA is also sensitive to deeply-rooted

4

principles of federalism, reserving to the States primarily local matters.

646 F.3d at 178.

CAFA's discretionary jurisdiction provision provides:

(3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of–

> (A) whether the claims asserted involve matters of national or interstate interest;
>
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

### A.

Defendants argue that the Court cannot even consider the foregoing factors for two reasons: Plaintiffs have not shown that more than one-third of the proposed class are Tennessee citizens or that either of the remaining Defendants are citizens of this state. The Court disagrees.

With regard to the first point, Defendants argue that Plaintiffs, in their moving papers, seek to "satisf[y] the citizenship requirement set forth in § 1332(d)(3) with nothing more than an approximated guess that the requisite percentage of the Plaintiff class are Tennessee citizens." Instead, Plaintiffs merely state that "approximately forty-six percent (46%) of the member of the class are believed to be citizens of Tennessee." (Docket No. 20 at 17).

Although the statute is unclear as to who carries the burden, its seems that the party asking a court to decline to exercise jurisdiction under CAFA should carry the burden of persuasion. There is authority for that proposition. See Myrick v. WellPoint, Inc., 2014 WL 4073065, at *2 (7th Cir. Aug. 14, 2014) (stating that statute is "not clear," but placing the burden of production on party seeking remand); Wurtz v. Rawlings Co., LLC, 2014 WL 3746801, at *3 (2nd Cir. July 31, 2014) ("The Second Circuit has declined to reach the issue of who bears the burden with regard to CAFA exceptions"); Vodenichar v. Halcon Energy Properties, Inc., 733 F.3d 497, 503 (3rd Cir. 2013) ("The party seeking to invoke an exception bears the burden of proving by a preponderance of the evidence that the exception applies"). Regardless, the citizenship of the members of a proposed class cannot be based on "guesswork"; "there must ordinarily be at least some facts in evidence" regarding citizenship. Mondragon v. Capital One Auto Finance, 736 F.3d 880, 884 (9th Cir. 2013).

In conjunction with their reply, Plaintiffs supplemented the record with the Affidavit of John Moore, President and Assistance to the Secretary of the Renegade Mountain Community Club. In his Affidavit, Mr. Moore asserts that he retrieved an "Assessment Roll Database" printout from the Tax Assessor's office for the "location code G01" and compared that 169-page printout with the master database for Renegade Resort. (Docket No. 29-2, Moore Aff. ¶¶ 5-6). His comparison of the record showed that "of the 546 owners of record (536 without dual residency status), owning lots

6

and/or living units within the Renegade Resort, 263 (48.17%) owners show an official Tennessee address of record." (Id. ¶ 8).

Residency, perforce, does not equate to citizenship, Walker v. Iverson, 509 F. App'x 394, 395 n.1 (6th Cir. 2012), but various cases "undeniably incorporate language amenable to an argument that the court may determine citizenship based solely on evidence of residency[,]" Preston v. Tenet Healthsystem Mem. Med. Ctr., Inc., 485 F.3d 793, 800 (5th Cir. 2007) (collecting numerous cases, including the Sixth Circuit decision in Fort Knox Transit v. Humphrey, 151 F.2d 602, 602 (6th Cir. 1945)). In the CAFA arena, utilizing residency to establish citizens for purposes of the Act's exception has met with mixed results:

> Some courts . . . have found that mailing addresses used for sending payments or bills are insufficient to prove the class citizenship element under a CAFA exception. See, e.g., In re Sprint Nextel Corp., 593 F.3d at 674 (class definition of cell phone users with Kansas number and billing address was insufficient by itself to satisfy plaintiffs' burden of proof [and] expressing unwillingness to rely on "[s]ensible guesswork," although court was "inclined to think that at least two-thirds of those who have Kansas cell phone numbers and use Kansas mailing addresses are probably Kansas citizens"); Reece, 2013 WL 1342379, at *4 n. 7 (noting that, even if plaintiffs had presented proper evidence that putative class members' royalty payments were sent to Oklahoma addresses, this would have been "less than conclusive on the citizenship issue"); HMB Interests, LLC v. Chesapeake Louisiana LP, No. 12–2344–cv, 2010 WL 3604008, at *3 (W.D.La. Sept.18, 2013) ("The fact that a majority of the lessors list a Louisiana mailing address is not sufficient for the Plaintiffs to meet their burden of proof as to the citizenship requirement."). In contrast, other courts have found that mailing addresses are sufficient to raise a presumption of continuing domicile and citizenship. See, e.g., Preston II, 485 F.3d at 821–22 (where the defined class was a finite group of persons who were hospitalized by the defendant following Hurricane Katrina, mailing addresses in hospital records allowed district court to make a "credible estimate that at least one-third of the class were citizens of Louisiana" when the complaint was filed); Commisso, 2012 WL 3070217, at * 5 (holding that class citizenship element was satisfied based on class definition that limited plaintiffs to individuals who worked in New York office and defendants' evidence that 67.4% of the putative class members had a New York address) ("This data is more than sufficient to create a presumption that more than one third of the putative class members are New York citizens, and Commisso has not attempted to rebut this presumption."); Bey, 904

7

> F.Supp.2d at 1105 (relying on defendants' evidence that 90% of putative class members, which were employees at an Oregon corporation, had an Oregon address and had therefore presented prima facie evidence of citizenship in Oregon).

Jeter v. Wild West Gas, LLC, 2014 WL 3890308, at *10 (N.D. Okla. Aug. 7, 2014).

Because "the burden of proof placed upon a plaintiff should not be exceptionally difficult to bear," for a plaintiff seeking to establish a CAFA exception, Mondragon, 736 F.3d at 884, the Court finds Plaintiffs' evidence sufficient. This case involves a defined class of Tennessee property owners, and an indicia of domicile is property ownership. See e.g. Kyung Park v. Holder, 572 F.3d 619, 624 (9th Cir. 2009); Caffey v. Home Depot, 2014 WL 1681705, at *2 (M.D. Tenn. April 28, 2014). This is not to suggest that each of the 263 owners that comprise almost half of the class are necessarily Tennessee residents, but it is reasonable to conclude that more than 1/3 of the lot owners are Tennessee citizens when both the county assessor's and homeowners' associations rolls show that their address of record is in Tennessee. See Williams v. Homeland Ins. Co., 657 F.3d 287, 291 (5th Cir. 2011) (citation omitted) ("The district court may make 'a reasonable assumption' of CAFA's citizenship requirements from evidence that indicates the 'probable citizenship of the proposed class'"); Hollinger v. Home State Mut. Ins. Co., 654 F.3d 564, 572 (5th Cir. 2011)("The evidentiary standard for establishing citizenship and domicile at this preliminary stage [in a CAFA case] must be practical and reasonable.").

Turning to the second point, Defendants argue that Plaintiffs have not, and cannot, show that either of the primary Defendants is a citizen of Tennessee. This is because both Moy Toy and Standing Rock are limited liability companies comprised of Florida members.

"The general rule is that all unincorporated entities—of which a limited liability company is one—have the citizenship of each partner or member." Delay v. Rosenthal Collins Grp., LLC,

585 F.3d 1003, 1005 (6th Cir. 2009) (citing, Carden v. Arkoma Assocs., 494 U.S. 185, 187–92 (1990). However, "CAFA itself evinces an intent that suits by unincorporated associations be treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by the entity's principal place of business and not by the citizenship of its members." Erie Ins. Exchange v. Erie Indem. Co., 722 F.3d 154, 161 (3rd Cir. 2013). Specifically, the Act provides:

> (10) For purposes of this subsection and section 1435, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

28 U.S.C. § 1332(d)(10). Thus, "[f]or qualifying class actions . . CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes[.]" Davis v. HSBC Bank Nevada, N.A., 557 F.3d 1026, 1032 n.13 (9th Cir. 2009); see also Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1080 (5th Cir. 2008) (in Section 1332(d)(10) "Congress has created a statutory exception to" the general rule of citizenship for unincorporated associations).

Defendants concede that both Moy Toy and Standing Rock are Tennessee limited liability companies. For purposes of CAFA, they are Tennessee citizens. See, Ferrell v. Express Check Advance of SC LLC, 591 F.3d 698, 700 (4th Cir. 2010) (holding that a Tennessee limited liability company "is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10)" and a citizen of Tennessee).

**B.**

In determining whether it is "in the interest of justice" to decline jurisdiction, the Court is to look at the "totality of the circumstance" and consider the six factors listed in Section 1332(d).

Four of those factors clearly support declining jurisdiction in this case.

CAFA was intended to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate case of national importance under diversity jurisdiction." Pub. L. 109-2 § 2, 118 Stat. 4 (2005). In response to Plaintiffs' Motion to Remand, Defendants argue that this is a case of national or interstate concern because it "involves issues of contract law and property law that could impact countless developments and the effect of countless recorded documents." (Docket No. 20 at 18). This argument is not further developed, and the Court does not understand how this case will impact countless developments and documents. See, Preston, 485 F.3d at 822 (in CAFA case involving New Orleans hospital's actions during Hurricane Katrina, "broad statement" about evacuation of medical facilities during disasters being a national concern "could swallow the rule" because "many events isolated to one area at any particular time may reoccur in another geographic location in the future").

Whether the case is heard by this Court or the Chancery Court, the decision will be limited to, and potentially affect the rights of, the owners of property and developer(s) of Renegade Resort. It involves the interpretation of restrictions relating to property in a portion of a single county, in a single state, and will be governed by the laws of the state of Tennessee. The first two factors, Sections 1332(d)(3)(A) and (B) favor remand. See Foley v. Cordillera Golf Club LLC, 2012 WL 114856, at * 6 (D. Colo. April 5, 2012) (declining to exercise discretionary jurisdiction under CAFA where claim involved membership rights in golf course and a restaurant in county in Colorado and matter involved contract claims that would likely be governed by Colorado law).

The third and fourth factors also favor remand. While "CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction," Freeman v.

10

Blue Ridge Paper Products, Inc. 551 F.3d 405, 407 (6th Cir. 2008), there is no indication that the Complaint was pled in such a was so as to avoid this Court's jurisdiction. The case involves real property right that are traditionally within the purview of state courts. United States v. Real Property & All Furnishings Known As Bridwell's Grocery, 195 F.3d 819, 821 (6th Cir. 1999). It was filed in the most logical forum for that dispute – the Chancery Court for the county in which the property is located – and in a court that has a "distinct nexus with the class member, the alleged harm, [and] the defendants[.]" 28 U.S.C. 1332(d)(3)(D).

With regard to the fifth factor, Plaintiffs assert that "the number of members of the Plaintiff class that are citizens of Tennessee is substantially larger than the number of class members from any other state." (Docket No. 18 at 10). Defendants do not challenge that assertion. While it seems logical that Tennessee lot owners would substantially outnumber the owners from any other state (particularly since nearly half of the putative class has a Tennessee address), the Court does not consider this a factor in its decision to decline jurisdiction.

With regard to the sixth and final factor, there was a previously-filed putative class action that raised at least some claims similar to the ones presented in this litigation. However, this does not strongly favor retaining jurisdiction because the class action status in that case was denied by the Chancery Court. See, Buck v. Metro-Goldwyn-Mayer Studios Inc., 2014 WL 3510151, at *5 (C. D. Cal. July 24, 2014) ("Th[e] final factor's purpose is efficiency and fairness," with the intent being to insure that class action litigation "be handled efficiently on a coordinated basis pursuant to ... 28 U.S.C. § 1407").

In short, "CAFA's primary objective" is to "ensur[e] Federal court consideration of interstate cases of national importance." Standard Fire Ins. Co. v. Knowles, 133 S.Ct. 1345, 1350 (2013). The

totality of the circumstances indicate that this simply is not such a case.

## C.

As a part of their Motion to Remand, Plaintiffs request attorney's fees and costs under the removal statute.

So far as relevant, that statute provides: "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Even though a district court has "considerable discretion to award or deny costs and attorney fees" under the statute, "the Supreme Court has instructed that fee awards are inappropriate unless 'the removing party lacked an objectively reasonable basis for seeking removal.'" Powers v. Cottrell, Inc., 728 F.3d 509, 515 (6th Cir. 2013) (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)).

Defendants' removal of this case was not objectively unreasonable, and Plaintiffs do not argue otherwise. Their request for attorney's fees and costs will be denied.

## VI.

On the basis for the foregoing, Plaintiffs' Motion to Remand will be granted and this case will be remanded to Chancery Court. Plaintiffs' request for attorney's fees will be denied.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE